The food effects case, probably, is the way to say it. Internally, I've been referring to them as paddle and fed. Okay. The food effects or the paddle case. All right. We got you. Please proceed. Thank you. May it please the court. The PTO here admits that not all of the elements of the claims are in the prior art. They have flat out admitted that there is nothing in the prior art that teaches a renal effect. A difference in how the body responds to oxymorphone based upon the renal condition of the client. That is in the board's opinion. It is, however, then argued by the board that somehow there is an obviousness by inherency. No one of skill in the art at the time the invention was made appreciated this difference. It's an important language. That's the statute. That's section 103. For the board, didn't you concede that the food effect doesn't vary with formulations? Isn't that a bit of a concession beyond your ability to overcome at this point? But, your honor, that's not material. What's material is not what we understand now based upon having realized there was this difference. What's material is what's in the prior art that can be applied against the claims. And there is nothing in the prior art. There's no finding of fact. The board is very clear that that is not contained in the prior art. There is no teaching. And that failure of teaching alone indicates this cannot be an obviousness case. In re sporemem, from this court, makes very clear you cannot base obviousness on what was not known. And yet, that is exactly what the board did. For that reason alone, this case ought to be reversed as an error of law. There is no prima facie case. Moreover, and we've talked about the Fisk declaration already, but Fisk makes clear that there is no motivation. There is no likelihood of success for substituting oxymorphone for oxycodone in the Maloney reference, which again is the same element that's being applied here. What the board did, however, was it used Maloney and it used this concept of inherent obviousness and it violated the sporemem case which I've mentioned. I apologize. I'm probably going to mispronounce the name of the other case. The Ridgecord case, R-I-J-C-K-A-E-R-T, in which it says that you cannot use the application and the submissions during prosecution to create this relationship when there's nothing in the prior art. How do you weigh that case law against the other case law that says you don't get a patent for discovering a new property? Assuming that this food effect is different, you've discovered a new property, that wouldn't give you a patent, would it? Well, this isn't a property in the isolation, Your Honor. Those are the 101 cases. Those are the statutory subject matter cases that talk about whether or not you can get a patent on a property devoid of any functional relationship. We're not dealing with that here. What we're dealing with is an identification that there is an explicit food effect and an understanding that that food effect ought to be used in a proper way to provide analogies here for 12 hours. Does your argument turn on whether or not we're willing to allow inherency to be used in the obviousness analysis? Well, certainly that issue goes to whether or not the Board has established a prima facie case. But if we say that the Board can, in fact, use material inherently present, does that end your case? It does not, Judge Moore. What other? Oh, you mean other? Okay, so then there's also the secondary consideration. Yes, Your Honor. But I meant with regard to the prima facie case. With regard to the prima facie case, we have the issue of the claimed food effect, and that's not in the prior art. That's the obvious by inherency application. There is also the concept of analgesia effective for 12 hours, which is in each of the claims. That's not found in Maloney, and that does not turn on the obviousness by inherency issue. What does Kubin add to this question? The Kubin case, Your Honor, deals with a much more specific issue, because in Kubin that prior... Does the nail bind to the CD-48? Correct, and there was the issue of nail and was also known by the name of P-38. And what it turned out is when you made the correlation between P-38 and nail, you then knew all of this information from the prior art. In Kubin, the missing points, if you will, the food effect as we apply it in this case, in Kubin that could be found in the prior art once you realized you were talking about the same protein. Once you realized? Once you realized that nail and P-38 were the same protein. Once they had been sequenced, you look at it and you say, ah, so all this information is in the prior art. I just did a computer search under the wrong name. But wasn't that an inherent property then in Kubin? It wasn't just inherent. It was known. It was published. The court said in Kubin specifically that that element was known in the prior art. It was the tying it together. But it was not tying together any elements that weren't previously known. Why wouldn't it be inherently understood that there's a food effect in every case? Well, Your Honor, now you're getting into an issue that a lot of people in the pharmaceutical world have grappled with. And sometimes there's a food effect, sometimes there's not. Sometimes food can be detrimental. Sometimes food can be beneficial. Sometimes food can increase absorption. Sometimes food can decrease absorption. But now we're all into topics that are outside of the record in this case. And the obligations have findings of fact that can be reviewed. Counsel, if inherency is able to be used for anticipation, which you agree our case law says it is. Yes. My concern is you have a piece of prior art which anticipates, but you need inherency. Okay. We can use inherency. It's rejected. And you have the same piece of prior art. And the patentee throws in a totally obvious, insignificant, little tiny addition to the claim that everyone would agree is obvious. But now suddenly we can't allow the office or anyone else to use the inherency doctrine. And that to me seems to create somewhat of a perverse result. And so my concern to you is tell me why inherency should be allowed to be used for anticipation, but not for obviousness given the result it would cause in the application to the law. Obviously we're not dealing with a small little item added here. But let me answer your law question. I'm giving you a hypothetical to look at a legal principle. Why inherency shouldn't be useful in obviousness given that it is in anticipation. Exactly. And I want to get to that. I want to address your law question. And there's two points I want to make to you. Number one is anticipation is, was it done before? We're not asking, the statute doesn't ask in anticipation, what did somebody of skill in the art understand? 103 does. So we have a very different statutory framework. But we also have a consistently different application of prior art between 102 and 103. For instance, in a section 102 application of prior art, you can actually rebut that by showing it's not enabled. We allow in the case law of this circuit and its predecessor courts say, if you apply prior art in a section 102 context for anticipation, if you can show that that prior art's not enabled, you've overcome the rejection. We don't do that in 103. 103, we don't have an enablement standard for prior art. We don't need one because we have the question of, what did somebody of skill in the art understand? Now, you could say that what did somebody of skill in the art understand is similar to enablement in terms of that test of a piece of prior art. But that's not necessarily the case because it could be that those of skill in the art thought it would work. And therefore, based upon thinking it would work, they accepted that conventional wisdom. And therefore, you can apply the prior art under 103. But maybe in reality, if you tested it, it doesn't work. But inherency requires always, 100% of the time, it's always present. So I understand your big picture distinction between 102 and 103 generally, but I don't see how that distinction makes any difference with regard to the inherency argument as opposed to just recognizing a general difference between 102 and 103. Inherency requires 100% of the time this is always present. So there isn't that maybe it is, maybe it isn't. People think it is, but it really isn't. None of that is present when we're talking about inherency. I agree with you. It does require 100% of the time. And under 103, there's more of a standard of what do those people skilled in the art understand. That's the statute. If there's no further questions, I'll reserve the remainder of my time. Thank you, Mr. Lewis. Let's hear from Ms. Lynch. Ms. Lynch. Why didn't the board produce another reference showing food effects? I don't know, Your Honor. Doesn't that give you a significant problem here? Your Honor, I don't think so. I think this case falls squarely within the Kubin case. And in Kubin, you had an isolated DNA encoding a protein now which binds to CD48. And Kubin specification was the first place where anyone said that nail binds to CD48. And this court said that it was not necessary that the binding of nail to CD48 be found in the prior art. Kubin's application itself instructs that CD48 binding is not an additional requirement imposed by the claims on the nail protein, but rather a property necessarily present in the nail. And that's exactly what we have here, Your Honor. We have, the board had no obligation to predicate its obviousness finding on the prior art teaching. It was inherent in the property. You know, under there, you can't take an obvious... When we, and Judge Moore has explored this with Mr. Lewis rather insightfully. Mr. Lewis' response was, but inherency is different in an obviousness context, because there you're asking what is the knowledge of one of skill in the art. And one of skill in the art may not know the inherent characteristic. It may be unknown. And, but Your Honor, under the Kubin analysis, the court said that did not matter. That when you just tack on, which is exactly what they've done here, they've just tacked on an inherent property of the oxymorphone at the end of this claim. You could read this claim and put a period after the word oxymorphone and not even have this, and it wouldn't change the claim. It's not a step in the method. It doesn't mean anything. Under their reasoning, Dr. Kao could go back to his lab today, discover somehow that oxymorphone fluoresces orange, and then they could put forward the same exact claim, and at the end put wherein oxymorphone fluoresces orange. They can't take an obvious claim where everything is suggested or taught in Malowney and tack on this inherent property and use that. You're saying it would be different if it was a method claim where, for example, it was articulating the steps of administering the drug and said when you have someone who is going to eat, give them 50% less of the drug than you would otherwise, and if that was one of the steps in the method of administering it, that would be a different situation. Then you would agree the PTO would need a reference. That's probably correct, Your Honor. That would be a different situation, but they can't take an obvious claim here and just tack on some inherent property. Are two data points enough for inherency, though? That's my concern. But there's no dispute. There's no dispute by Kao that it is an inherent property. They said it at the oral argument. They don't dispute it. Mr. Lewis, when I asked about the Kubin case, said, ah, but this inherent characteristic was known in Kubin. Is that correct? No, Your Honor, not my reading of Kubin. It's not known in Kubin, and I don't think the court would have said what it said if it was known in Kubin. So I don't think it is. So you see this case as Kubin is square on this case? I do, Your Honor. The other thing he said that Malani doesn't teach the effectiveness for 12 hours, but I disagree with that as well. The board's finding is that Malani's formulations provide a dissolution rate of between 60 to 80 percent of active ingredient released after 12 hours, and it's reasonable to conclude that it would still be effective at 12 hours because it's still being released at that time. If Your Honors have nothing else. Thank you. Thank you. Ms. Lynch? Lewis, maybe you'd return to that Kubin case, which seems to be a rather important point here. I'll be happy to, Your Honor, and I am reading from page 1357. Because the court sustains under substantial evidence review the board's finding that Valenti's P38 is the same protein as a pellet's nail, Valenti's teaching to obtain cDNA encoding P38 also necessarily teaches one to obtain cDNA of nail that exhibits the CD48 binding properties, and the earlier discussion in here. Yeah, but the question is, did they know it before? The earlier discussion of the Matthew reference, two or three pages earlier, sets that out. Why would we have gone into all of that discussion if it was known before? Maybe just bad authorship, right? I think it was a full analysis, Your Honor, a full and complete analysis. I know my time is almost up. I wanted to just turn to a question that Judge Moore asked very briefly on the issue of inherency by obviousness. And Judge Moore, I submit to you that if inherency by obviousness exists, there will never again be a second use patent on a product that's been developed in the pharmaceutical world. Because if it inherently treats a property, even if it's not known, you would forever be able to use the earlier development to prevent an improvement. So when Chief Judge Rader asked the question about aspirin for a new use, the fact that aspirin was ever used would forever inherently bar patentable. No, it all depends on how you write the claims. I mean, the PTO solicitor indicated that this would be a very different situation if your claim was written to require 50 percent less oxymorphone in an instance when you're fed. It depends on how you write the claims, doesn't it? I mean, wouldn't you still, under her admission, be able to get patent claims even here, depending on whether we're talking – and in fact, don't you actually have them in a different patent method? There are a host of patent applications out of the same KO family. But the point is that the general law principle of obvious by inherency would always prevent a future patent on an already developed product. I don't think that's right, is it? I think it is, Your Honor. You wouldn't get a product claim for a second use anyway. You would only get it for the limited use. And that would be no inherency blocking that. I don't think there would be a method of use claim available if you gave it to – if ever there was a person who took it with a particular condition, it would have treated that condition even if they didn't know it. But the method of use would be a method of using it to treat that condition as opposed to a method of using it for some other purpose. I think – Isn't that correct? I disagree. I respectfully disagree, Judge Moore. Which is, I think there are ways that you could write claims, but I think if you're dealing with – you're dealing with co – I would call it co-dependent – with ailments that often happen at the same time, I think you would be blocked. And so I do know that I'm over my time. I want to apologize to the Court. I misspoke when I first started my argument. I referred to renal instead of fed. That, of course, is our third case. So I apologize for that, but I do think that the failure of findings here also warrant reversal. Thank you.